# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DELISHA GARDNER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-16-233-F |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for supplemental security income (SSI) and disability insurance benefits (DIB) under the Social Security Act. United States District Judge Stephen P. Friot has referred this matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision be **AFFIRMED.**

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

Plaintiff's applications for SSI and DIB were denied initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 84-98). The Appeals Council denied Plaintiff's request for review. (TR. 4-7). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 25, 2011, the alleged disability onset date. (TR. 86). At step two, the ALJ determined that Plaintiff had severe impairments involving: disorders of the cervical spine, discogenic and degenerative; obesity; and schizoaffective disorder. (TR. 86). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 90).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (TR. 96). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [P]erform "light work," as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant can only: occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; perform no work overhead; as to the use of the upper extremities below overhead level, frequently, but not constantly, reach, handle, finger, feel; must avoid exposure to extreme cold, i.e., temperatures under 40 degrees; must avoid concentrated exposure to vibration; must avoid

exposure to workplace hazards, such as dangerous moving machinery and unprotected heights; understand, remember, and carry out simple and detailed, but not complex or involved, instructions; have only incidental, superficial work-related type contact with the general public, co-workers and supervisors, i.e., brief, succinct, concise communication relevant to the task being performed.

(TR. 93).

Based on the finding that Plaintiff could not perform her past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC in a question to a vocational expert (VE) to determine if there were other jobs Plaintiff could perform. (TR. 133-134). Given the limitations, the VE testified that Plaintiff could perform three jobs as set forth in the Dictionary of Occupational Titles (DOT). (TR. 134-135). The ALJ adopted the testimony of the VE and concluded that Ms. Gardner was not disabled. (TR. 98).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges error in: (1) the RFC, (2) the evaluation of various mental impairments, and (3) the consideration of her obesity.

## IV. NO ERROR IN THE RFC

On June 28, 2011, treating physician Dennis Foster, M.D., prescribed a brace for Ms. Gardner's right wrist following complaints of problems with her right hand. (TR. 447). On August 5, 2011, Dr. Foster discharged Plaintiff from his care, and released her to regular work, although he stated that she should "not take a job that requires repetitively gripping or grasping with her right hand[.]" (TR. 448). In the administrative decision, the ALJ accorded "great weight" to Dr. Foster's opinion, although the ALJ characterized the

opinion as disallowing work involving "repetitive fingering or grasping." (TR. 96). In the RFC, however, the ALJ stated that Ms. Gardner could "frequently, but not constantly, reach, handle, finger, [and] feel[.]" (TR. 93). With the limitations allowing the ability to "frequently" reach, handle, finger, and feel, the VE stated that Ms. Gardner could perform the jobs of Housekeeping Cleaner (DOT #323.987-014), Routing Clerk (DOT #222.587-038), and Cafeteria Attendant (DOT #311.677-010). All three jobs require the ability to "occasionally" finger and "frequently" handle. DOT #323.987-014, DOT #222.587-038, DOT #311.677-010.

Ms. Gardner alleges a conflict between the ALJ's apparent adoption of an opinion which prohibited "repetitive" "fingering" or "grasping" and the RFC which allowed Ms. Gardner to perform work involving the ability to "frequently" "handle" and "finger." (ECF No. 16:2-4). Ms. Gardner alleges that the ALJ: (1) impermissibly translated the meaning of Dr. Foster's opinion and equated it with the ability to perform work which required "frequent" use of Plaintiff's hands and (2) failed to ask the VE to reconcile the apparent conflict between Dr. Foster's opinion and the jobs identified at step five.

At the outset, clarification of terms used by the ALJ, the DOT, and Dr. Foster is necessary. Each job listed in the DOT sets forth specific requirements related to a qualified individual's ability to perform the job. Relevant to the instant case are the abilities to "finger" and "handle." Dr. Foster's limitations prohibited Plaintiff from performing work involving repetitive "gripping or grasping"—neither of which are specifically set forth in the DOT. (TR. 448). The ALJ translated Dr. Foster's opinion to prohibiting work involving repetitive "fingering or grasping." (TR. 96). The undersigned, however, concludes that

4

both "gripping" and "grasping" fall under the rubric of "handling." *See* SSR 85–15, at *7 (defining the DOT ability of "handling" as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands"). But in an abundance of caution, and because Plaintiff does not challenge the ALJ's translation of "gripping" to "fingering" and the SSA has clearly defined "grasping" as one component of "handling" the undersigned finds that the relevant abilities at issue involve Plaintiff's abilities to "finger" and "handle."

Plaintiff's primary argument, however, is that the ALJ impermissibly translated Dr. Foster's opinion which disallowed "repetitive" manipulative limitations to a finding that Ms. Gardner *could* "frequently" "finger and handle." According to Plaintiff, the RFC error affected the subsequent hypothetical to the VE. As a result, Ms. Gardner alleges that the jobs at step five lacked substantial evidence because they had been premised on a faulty hypothetical. The Court should disagree.

The *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* states that "occasionally" involves an activity existing up to 1/3 of the time, "frequently" involves an activity existing from 1/3 to 2/3 of the time, and "constantly" involves an activity or condition that exists 2/3 or more of the time. (U.S. Dept. of Labor 1993) at C–3. In a related issue, the Tenth Circuit Court of Appeals found that the term "repetitive" was equivalent to "constant"—existing 2/3 or more of the time. *See Gallegos v. Barnhart,* 99 F. App'x 222, 224 (10th Cir. 2004). Thus, the ALJ could reasonably conclude that the limitation by Dr. Foster which disallowed "repetitive" hand manipulations would not preclude "frequent" "handling" and "fingering." *See Culp v. Astrue*, 2012 WL 3443335, at *6 (D. Kan. Aug. 14, 2012) (no discrepancy between

limitation prohibiting "repetitive" hand manipulations and RFC which allowed for "frequent" "handling" and "fingering.").

Ms. Gardner also alleges that the ALJ should have asked the VE "to reconcile this conflict" between Dr. Foster's opinion and the jobs relied on at step five. (ECF No. 16:3-4). But as explained, no conflict existed. Dr. Foster's opinion was consistent with the RFC determination, which allowed for "frequent" "handling" and "fingering." In turn, those limitations were posed in a hypothetical to the VE who identified three jobs which could be performed. All three jobs required "frequent" "handling" and "occasional" "fingering"—abilities which were consistent with the RFC and Dr. Foster's opinion.

In sum, the Court should conclude that no error existed in the ALJ's evaluation of Dr. Foster's opinion, subsequent RFC determination, and reliance on the jobs at step five.

## V. NO ERROR IN THE CONSIDERATION OF MENTAL IMPAIRMENTS

Ms. Gardner alleges the ALJ erred in failing to: (1) include limitations related to her schizoaffective disorder which he found "severe" at step two and (2) properly evaluate Global Assessment Functioning (GAF) scores. The Court should disagree.

### A. Schizoaffective Disorder

At step two, the ALJ concluded that Plaintiff suffered from "severe" schizoaffective disorder. (TR. 86). As a result, Plaintiff alleges that the ALJ erred by "fail[ing] to include all proper limitations related to that condition in the claimant's RFC." (ECF No. 16:4).

Once a claimant's impairments are deemed severe at step two, the ALJ has to discuss their impact throughout the remainder of the disability determination. 20 C.F.R. §§ 404.1545(a)(2) & 416.945(a)(2). Indeed, in formulating the RFC, the ALJ must discuss

the combined effect of all the claimant's medically determinable impairments, both severe and nonsevere. *See Wells v. Colvin,* 727 F.3d 1061, 1065 (10th Cir. 2013). However, "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, ___ F. App'x. ___, 2016 WL 6440368 at *4 (10th Cir. 2016). Likewise, the presence of an impairment, albeit severe, does not necessarily equate to corresponding limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. 2014). The RFC need only include such limitations as the medical record substantially supports. *See Kirkpatrick v. Colvin*, ___ F. App'x ___, 2016 WL 5920745, at *3 (10th Cir. 2016) ("Clearly, an ALJ doesn't commit error by omitting limitations not supported by the record"); *Arles v. Astrue*, 438 F. App'x. 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record").

Plaintiff argues that the ALJ failed to account for Ms. Gardner's "severe" schizoaffective disorder in the RFC. (ECF No. 16:4-5). In support, Plaintiff states that the ALJ "should explain how the claimant's unchallenged evidence related to her mental health problems translates to the ability to interact with co-workers and supervisors under routine supervision." (ECF No. 16:5).

With respect to Plaintiff's ability to interact with co-workers and supervisors, the ALJ limited contact and work in this area to only "incidental and superficial work-related type conduct." (TR. 93). Aside from her statement regarding her ability to interact with co-workers and supervisors, Ms. Gardner fails to: (1) identify any specific work-related limitations stemming from the schizoaffective disorder, (2) point to any evidence in the

7

record supporting her claim, or (3) argue how her schizoaffective disorder would impact the ability to perform the identified jobs. As a result, the Court should conclude that Plaintiff has not met her burden to establish error in the RFC. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987) (the claimant has the initial burden of establishing a disability in the first four steps of this analysis); *Kirkpatrick*, ___ F. App'x ___, 2016 WL 5920745, at *3 (rejecting Plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how these restrictions fail to account for his [limitations] . . . [a]nd it isn't our obligation to search the record and construct a party's arguments."); *McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (citation and internal brackets omitted)).

### B. GAF SCORES

Ms. Gardner alleges error in the evaluation of GAF scores which had been authored by medical professionals at North Rock Medication Clinic and Red Rock Behavioral Health Services. (ECF No. 16:6-13). The findings at issue involve scores of 41, 42, 48, and 41 dated August 3, 2012, August 17, 2012, September 14, 2012, and February 14, 2013, respectively. *See* TR. 633, 612, 614, 643. None of the scores were accompanied by narrative findings or explanations. *See id.*

"The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and

8

occupational functioning." *Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1162 n. 1 (10th Cir. 2012) "A GAF score of 41–50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley v. Barnhart*, 373 F.3d 1116, 1122, n.3 (10th Cir. 2004). In the decision, the ALJ gave a detailed summary of Plaintiff's mental health records, including the records from North Rock and Red Rock, although admittedly, the ALJ failed to specifically mention the GAF scores of 41, 42, and 48. (TR. 90). Ms. Gardner maintains that the ALJ should have discussed the scores because they indicated an inability to work, contrary to the ALJ's findings. (ECF No. 16:6). The Court should disagree for two reasons.

First, Ms. Gardner has failed to show that the ALJ ignored the GAF scores. The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater,* 79 F.3d 1007, 1009–1010 (10th Cir. 1996). The ALJ discussed the findings from practitioners at North Rock and Red Rock, even noting that in the past year, Plaintiff's GAF had been 55. (TR. 90). Error does not exist based on an ALJ's failure to explicitly mention each piece of evidence contained in the reports. Moreover, the ALJ stated that he considered the entire record, and the Court must take the ALJ at his word. (TR. 80). *See Wall v. Astrue*, 561 F.3d 1948, 1970 (10th Cir. 2009).

Second, the Court should conclude that the GAF scores were not significantly probative. A low GAF score, standing alone, is insufficient to prove disability because "the Social Security Administration does not consider GAF scores to have a direct correlation to the severity requirements in [the] mental disorders listings, and the [ ] *Diagnostic and*

9

*Statistical Manual of Mental Disorders* has discontinued its use because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Rose v. Colvin*, 634 F. App'x. 632, 636 (10th Cir. 2015) (internal quotation marks and citations omitted). The records contained no explanation regarding how the GAF scores had been calculated, nor did any medical profession link the scores to any particular symptoms or state whether they impacted Ms. Gardner's ability to work. *See* TR. 633, 612, 614, 643. Although Plaintiff maintains that the scores "indicated an inability to work, which ran in contradiction to the ALJ opinion," Ms. Gardner's theory is not entirely self-evident. (ECF No. 16:6). *See Butler v. Astrue,* 412 F. App'x 144, 147 (10th Cir. 2011) (noting that GAF scores that are not linked to any work-related limitations are not particularly helpful and cannot alone determine disability); *Eden v. Barnhart,* 109 F. App'x. 311, 314 (10th Cir. 2004) (noting that because a GAF of 50 "may not relate to [Plaintiff's] ability to work, the score, standing alone, without further explanation, does not establish an impairment severely interfering with an ability to perform basic work activities."). Indeed, the August 17, 2012 report stated that Plaintiff's GAF was 42 and also that Plaintiff had reported several social and familial problems, which could have explained the score. *See Lee v. Barnhart,* 117 F. App'x. 674, 678 (10th Cir. 2004) (noting that an unexplained GAF score might indicate an impairment "solely within the social, rather than the occupational, sphere").

Because the GAF scores were not significantly probative and the ALJ stated that he considered all of the evidence in the record, the Court should reject Plaintiff's argument regarding error in the consideration of GAF scores.

## VI. NO ERROR IN THE CONSIDERATION OF OBESITY

Plaintiff alleges the ALJ erred in consideration of her obesity. The Court should reject this argument.

### A. ALJ's Duty to Consider Obesity

Social Security Ruling 02–1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* SSR 02-1p, 2000 WL 628049 at *1, *3 (Sept. 12, 2002) (SSR 02-1p). At step two, obesity will be found to be a "severe" impairment when, alone, or in combination with another medically determinable impairment, it significantly limits an individual's physical or mental ability to do basic work activities. *Id.* at *4. At step three, the Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00(Q).

At step four, when assessing an individual's RFC, the ALJ "must consider any additional and cumulative effects of obesity." *Id.* For example, fatigue may affect an obese individual's ability to sustain work activity and the combined effects of obesity with other impairments might be greater than may be expected without obesity. SSR 02-1p at *6. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and the ALJ "will evaluate each case based on the information in the case record." *Id.*

11

## B. No Error in the ALJ's Consideration of Ms. Gardner's Obesity

As noted by Ms. Gardner, the record contains evidence that she is 5'4" tall and at various times throughout the disability period, she weighed between 206-211 pounds. *See* TR. 381, 617, 621, 625, 630, 678, 682, 687. Ms. Gardner's weight translated to a body mass index (BMI) ranging between 35.35 and 36.04—levels which are consistent with obesity as defined by the SSA. SSR-02-1p at *2.

At step two, the ALJ expressly found that Plaintiff's obesity was a severe impairment. (TR. 86). As a result of this finding, the ALJ was obligated to address the functional restrictions associated with the obesity. *See* 20 C.F.R. §404.1520(a)(4)(ii), (c), (e), (g), § 416.920(a)(4)(ii), (c), (e), (g). Further, in assessing Plaintiff's RFC, the ALJ was required "to give adequate consideration to the effect of [Plaintiff's] obesity in combination with her other severe impairments." SSR 02-1p at *6. The Court should conclude that the ALJ fulfilled his duty in this regard.

In the opinion, the ALJ acknowledged the obesity as severe at step two. (TR. 86). Next, the ALJ evaluated the obesity under SSR 02-1p and made the following findings:

> Pursuant to Social Security Ruling 02-01, the undersigned understands, and has also considered, that obesity can cause limitation of function. The combined effects of obesity with other impairments may be greater than might be expected without obesity. Accordingly, as per the requirements of Social Security Ruling 02-01, the undersigned has considered the effects of the claimant's obesity when determining whether the claimant's impairments, both singly or in combination, met or equaled a listing, as well as in determining the claimant's residual functional capacity immediately following.
>
> The claimant has reported chronic musculoskeletal pain. X-rays and magnetic resonance imaging studies have been negative. The claimant has not had referrals for extensive pain treatment, nor has she had referrals for

> orthopedic or neurological specialists. She does not have consistent findings of a loss of gait or station, nor are there findings of lack of gross and fine manipulation. There is no evidence of joint dysfunction or malformation. She likely has aggravation of weight-bearing joints by her size. The claimant does not have consistent evidence of reflex loss, motor loss, sensory loss, muscle atrophy, positive straight-leg raising.
>
> …
>
> The claimant's obesity was evaluated under Social Security Ruling 02-1p, and it was determined that her obesity was not of such a level that it resulted in an inability to ambulate. Other complications of obesity have been considered in the other impairments above. The record does not establish that the claimant's obesity has increased in severity or coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.

(TR. 91).

The ALJ acknowledged the standard for evaluating Plaintiff's obesity and fulfilled his duty in properly assessing the impairment. The ALJ was required to analyze the functional loss and limitations caused by the obesity, both alone and in combination with other impairments. He did so and concluded that although Ms. Gardner's obesity, even when considered in combination with other impairments, did not meet or equal a listed impairment. (TR. 91). Even so, the ALJ recognized that Ms. Gardner's weight likely aggravated her weight bearing joints. (TR. 91). As a result, the ALJ limited Ms. Gardner to light work, with the ability to only occasionally climb ramps and stairs, balance, stoop, kneel crouch and crawl, and no ability to climb ropes, ladders, or scaffolds. (TR. 93).

In sum, the Court should conclude that the ALJ did not err in evaluating Ms. Gardner's obesity.

## VII. RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **AFFIRMED**.

## VIII. NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **February 27, 2017**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

### STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on February 13, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE